UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KENNETH HEBERT, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:13-CV-00076 |
| | § | |
| FRANK WADE, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This case involves a dispute over multi-million dollar construction projects in the oil and gas industry in Nigeria. Plaintiff Kenneth Hebert, a resident of Louisiana, alleges various contract and tort claims against Defendants Frank Wade and three OPI entities, all residents of Houston or foreign countries. Defendants seek to transfer this case to the Houston Division, arguing that it is a more convenient forum. Although many of the witnesses and other sources of evidence are located outside of both Houston and Galveston, the required comparison between the two divisions leads to the conclusion that the Houston Division is a "clearly more convenient" forum for this dispute. *See In re Radmax, Ltd.*, 720 F.3d 285 (5th Cir. 2013) (per curiam) (discussing the law on intradistrict transfers and explaining that it is relative, rather than absolute, convenience that is the key inquiry). Accordingly, the Court **GRANTS** Defendants' motion to transfer venue.

## I. BACKGROUND

An interconnected network of individuals and entities is involved in this contract dispute. Kenneth Hebert is the principal of Bear Marine Services, Ltd. and has extensive experience procuring large construction contracts in Nigeria. *See* Docket Entry No. 1 ¶ 6. The OPI entities—OPI International, Ltd. (OPI Ltd.), OPI International, Inc. (OPI, Inc.), OPI International Construction (OPI Construction), and OPI International NIG, Ltd. (OPI Nigeria)—are oilfield service and construction companies. *Id.* ¶ 6. Frank Wade is the current owner of OPI Ltd. and former owner of OPI Nigeria. *Id.* ¶¶ 8, 17. Neither Bear Marine nor OPI Nigeria, both citizens of Nigeria, is a party to this suit; however, they are both parties to a related lawsuit pending in Texas state court in Harris County. *See Hebert v. Wade*, No. 2012-75467 (269th Dist. Ct., Harris County, Tex. Dec. 28, 2012).

There are two alleged agreements between the parties. First, in January 2011, Bear Marine and OPI Nigeria entered into a Participation Agreement, in which Bear Marine "agreed to provide certain marketing and operational services" to OPI Nigeria in exchange for commissions on Nigerian construction contracts.[1] Docket Entry No. 1-1 at 4, 6. The Participation Agreement was negotiated by

---

[1] The existence of the Participation Agreement is not disputed. *See* Docket Entry No. 33 at 15. However, Defendants assert that the copy of the Agreement in Wade's original complaint omits an amendment from September 21, 2011. *Id.*

Hebert and Wade at a series of meetings in Houston, at least the first of which took place at the St. Regis Hotel, throughout 2010. *See* Docket Entry No. 1 ¶ 6. In reliance on this agreement and Wade's representations, Hebert alleges that he "immediately began securing large service contracts for Wade and his OPI entities" in Nigeria but was never paid the commissions. *See id.* ¶¶ 8, 12–14. The written agreement is the focus of the state court action.

Hebert tries to focus this lawsuit on another alleged agreement. The second agreement is an alleged oral promise Wade made Hebert during the series of meetings in Houston, "to convey Hebert a 2% interest in OPI Ltd" in exchange for Hebert's services in "facilitat[ing] the sale of OPI Nigeria to Nigerian interests." *Id.* ¶ 15. Hebert alleges he helped arrange the sale of OPI Nigeria for $48,000,000 but was not given his 2% ownership interest in OPI Ltd pursuant to the oral agreement. *Id.*

Hebert filed this federal lawsuit asserting numerous causes of action, including breach of contract, unjust enrichment, fraud, negligent misrepresentation, breach of fiduciary duty, and constructive trust claims. *See id.* ¶¶ 20–31. Defendants responded with a slew of jurisdictional challenges, attacking subject matter jurisdiction, requesting a stay under the *Colorado River* abstention doctrine, and seeking a transfer on convenience grounds to the Houston Division. The Court denied Defendants motion to dismiss for lack of subject matter jurisdiction at the

scheduling conference.  Given the Court's decision to transfer this matter to the Houston Division, it will leave the *Colorado River* issue to the district judge in Houston who presides over this case.

## II.    STANDARD FOR CONVENIENCE TRANSFERS

Transfer of venue is governed by section 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  The statute is intended to save time, energy, and money while at the same time protecting litigants, witnesses, and the public against unnecessary inconvenience.  *Republic Capital Dev. Grp., L.L.C. v. A.G. Dev. Grp., Inc.*, 2005 WL 3465728, at *8 (S.D. Tex. Dec. 19, 2005) (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)).  The plaintiff's initial choice of forum is entitled to deference, especially when he has chosen his home forum.  *Rimkus Consulting Grp., Inc. v. Balentine*, 693 F. Supp. 2d 681, 690 (S.D. Tex. 2010) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981)).  "Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."[2]  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

---

[2] In *Radmax*, the Fifth Circuit noted conflicting authority on whether a plaintiff's choice of forum

The application of section 1404(a) is a two-part process. The court must first determine whether the judicial district to which transfer is sought is a district in which the claim could have been filed. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam). If so, the court must then determine whether the transfer would serve "the convenience of parties and witnesses" and "the interest of justice," by weighing a number of private and public interest factors, none of which are given dispositive weight. *Id.* (citations and internal quotation marks omitted). Specifically, the Fifth Circuit has articulated the following factors:

> The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

---

is given more or less deference when an intradistrict transfer is sought, but declined to "announce a general standard governing intra-district transfers in all situations." *Radmax*, 720 F.3d at 289 (noting Eastern District of Texas cases affording plaintiffs' choice greater deference for intradistrict transfers but also citing a leading civil procedure treatise that concludes the deference should be less in this context (citations omitted)). Given Radmax's general thrust that intradistrict transfers are governed by the same standards that apply to interdistrict transfers, this Court will apply the "clearly more convenient" standard that *Volkswagen* announced for interdistrict transfers. *Cf. id.* at 288 (noting that courts should consider the same factors considered for interdistrict transfers when analyzing intradistrict transfers).

*In re Volkswagen of Am., Inc.*, 545 F.3d at 315 (citation omitted). "The 1404(a) factors apply as much to transfers between divisions of the same district as to transfers from one district to another." *Radmax*, 720 F.3d at 288 (citation omitted).

### III. ANALYSIS

As an initial matter, it is undisputed that Hebert's claims could have originally been filed in the Houston Division. The venue statute, 28 U.S.C. § 1391, is based on districts, not divisions. If venue is proper in Galveston, it is also proper in Houston. *See Perry v. Autocraft Investments, Inc.,* 2013 WL 3338580, at *2 (S.D. Tex. 2013).

Turning to the convenience factors, as discussed below, the Court finds that three favor transfer to Houston, one favors retaining the case in Galveston, and four are neutral or not implicated.

#### A. The Factors that Favor Transfer to Houston

##### 1. Ease of Access to Proof

The first factor that favors transfer to Houston is "the relative ease of access to sources of proof." *In re Volkswagen AG*, 371 F.3d at 203. Hebert argues that this factor is "essentially a wash" because while some sources of proof are in Houston, many would be in Nigeria or Louisiana. Docket Entry No. 6 at 9. The Court agrees that this factor does not weigh as strongly in favor of transfer as in cases such as *Radmax* where all of the evidence is in the transferee location. *See,*

*e.g.*, *Radmax*, 720 F.3d at 288 ("[B]ecause [a]ll of the documents and physical evidence are located in the [transferee] Division, this factor weigh[s] in favor of transfer.") (internal quotations omitted); *Perry*, 2013 WL 3338580, at *2 (determining that the first private factor favored transfer because the accident and all of plaintiff's medical treatment occurred in the transferee location). But, *Radmax* explains that it is the "*relative* ease of access, not *absolute* ease of access" that is the relevant inquiry. *Radmax*, 720 F.3d at 288 (emphasis in original). Thus, since neither party has identified any potential sources of proof in the Galveston Division, Houston's relatively easier access to potential documentary evidence favors transfer.

## 2. *Convenience for Witnesses and Parties*

The next factor that favors transfer to Houston is the cost of attendance for willing witnesses. It is the nonparty witnesses whose convenience is the most important consideration. *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex 2000) (citations omitted). In their initial briefings, both parties noted that witnesses would be from Houston, Louisiana, and Nigeria. *See* Docket Entry Nos. 11 at 5; 6 at 9–10. In a supplemental letter to the Court, however, Hebert identified an additional nonparty witness who is a resident of Galveston County. *See* Docket Entry No. 21 at 1. But, as Defendants point out in a reply letter, this new witness regularly works in Houston and resides in League City,

which is roughly equidistant from Houston and Galveston, and thus would not bear additional costs to appear in Houston. *See* Docket Entry No. 22 at 1.

Furthermore, Hebert argues that because the distance between Houston and Galveston is less than 100 miles, this factor does not support transfer. In the Fifth Circuit, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue . . . is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen of Amer.*, 545 F.3d at 317 (citation and internal quotation marks omitted). However, this 100-mile threshold does not mean that "transfer *within* 100 miles does not impose costs on witnesses or that such costs should not be factored into the venue-transfer analysis, but only that this factor has greater significance when the distance is greater than 100 miles." *Radmax*, 720 F.3d at 289 (emphasis in original). In *Radmax*, the Fifth Circuit found a distance of approximately 60 miles to be sufficient to weigh in favor of transfer. *Id*. The 50-mile distance from Galveston to Houston is similar. And the distance to Galveston is more like 70 miles from Intercontinental Airport—where witnesses residing in Nigeria would likely have to fly for trial. Although this factor does not weigh heavily because of the proximity of Galveston to Houston, the relative convenience of nonparty witnesses favors transfer.

### 3. *Local Interest*

The third factor that favors transfer is the interest in having localized interests decided at home. Of the three, this is the factor that most strongly favors transfer. Although some of the events relevant to this case transpired in Nigeria, far away from both Divisions, several of the OPI entities and Wade reside in Houston and some key events occurred in Houston—most importantly, the series of meetings between Hebert and Wade that allegedly gave rise to both the written and oral contracts. The Houston Division thus has a strong local interest in the enforcement agreements made within its borders and in considering fraud allegations against an individual and companies that reside in Houston. In contrast, no parties reside in Galveston and no events transpired in this Division. Therefore, the Court determines that the Houston Division has a stronger local interest in hearing this case.

### B. The Factor that Favors Galveston

The single factor that weighs in favor of retaining the case in Galveston is the first public interest factor—"the administrative difficulties flowing from court congestion." *In re Volkswagen AG*, 371 F.3d at 203. Although Galveston has a larger civil docket than Houston on a per judge basis, criminal cases typically pose a greater impediment to prompt civil trial settings. *See Mid-Continent Cas. Co. v. Petroleum Solutions, Inc.,* 629 F. Supp. 2d 759, 767 (S.D. Tex. 2009); 18 U.S.C.

§§ 3161-74 (Speedy Trial Act for criminal cases). According to recent court statistics, the Galveston Division has under 20 total criminal cases on its docket, while the Houston judges average about 70. The Galveston Division's lighter criminal docket allows it to resolve civil matters more quickly. Thus, this factor favors retaining the case.

### C. The Neutral Factors

The remainder of the convenience factors are neutral or not implicated by these facts. The first is "the availability of compulsory process to secure the attendance of witnesses." *Id.* Any witnesses within the subpoena power of the Galveston Division can also be compelled to appear in Houston. Second, "the delay associated with transfer may be relevant . . . where a transfer of venue would have caused yet another delay in an already protracted litigation." *Radmax*, 720 F.3d at 289 (internal citation, quotation marks, and alterations omitted). But "garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer." *Id.* Since defendants promptly filed this motion to transfer venue—exactly one month after the case was filed—transfer will not cause "yet another delay in already protracted litigation." *See* Docket Entry Nos. 1, 5.

The last factors—the forum's familiarity with the governing law and possible conflicts of law arising from the application of foreign law—do not affect

10 / 11

the analysis. Both the Galveston and Houston Divisions are equally capable of applying Texas tort and contract law, which presumably apply.

## IV. CONCLUSION

After weighing the factors, the Court concludes that the three favoring Houston, particularly having localized interests decided at home, clearly outweigh the one favoring Galveston. This case may not be as strong a case for intradistrict transfer as others the Court has had in which almost all of the conduct, parties, and witnesses are in Houston, *see, e.g., Perry* 2013 WL 3338580, but the fact that this case has little if any connection to Galveston still enables Defendants to meet their burden of establishing that Houston is "clearly more convenient."

For these reasons, the Court **GRANTS** Defendants' motion to transfer venue (Docket Entry No. 5). This action therefore is **TRANSFERRED** to the Houston Division of the Southern District of Texas.

**IT IS SO ORDERED.**

**SIGNED** this 7th day of October, 2013.

_____
Gregg Costa
United States District Judge